StaggWabnik LAW GROUP

David R. Ehrlich
*Partner*

Direct 516.812.4518
Fax: 516.812.4604

dehrlich@staggwabnik.com

staggwabnik.com

401 Franklin Avenue, Suite 300, Garden City, NY 11530
T 516.812.4550

331 Newman Springs Road, Building 1, 4th Floor, Suite 143, Red Bank, NJ 07701| T 732.784.1586
1111 Summer Street, 5th Floor, Stamford, CT 06905| T 203.967.4000

February 6, 2026

**VIA ECF**
Honorable Kenneth M. Karas
United States District Court
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Re: Glover v. City of New York
Case No.: 25 cv 01174

Dear Justice Karas:

We represent Plaintiff Keaunga Glover ("Ms. Glover") in the above-referenced matter, and write, pursuant to the Court's Rules, to request a pre-motion conference to receive permission to file a motion for leave to file an amended complaint, and to have the attached Proposed Amended Complaint be deemed filed as of February 6, 2026, *nunc pro tunc*. The Proposed Amended Complaint, with changes and additions highlighted in red, is attached to this letter as Exhibit A.

Plaintiff has worked for the City of New York, Department of Correction ("DOC") since June 2006. She was a member of the Investigations Unit at DOC—an elite unit. During the relevant period of time, her daughter had a serious health condition, *i.e.*, she suffered from a brain tumor, the effects of the brain tumor and the effects of the surgery performed to remove the brain tumor. Plaintiff applied for intermittent leave under the Family and Medical Leave Act ("FMLA"), and such intermittent leave was approved from August 24, 2022 through February 24, 2023.

On February 6, 2023, Plaintiff was scheduled to work overtime and arranged for a family member to take her daughter to her late afternoon/early evening doctor appointment—the neurosurgeon treating the brain tumor and post-surgery issues. However, the arrangements fell through in the middle of that day, and Plaintiff informed her supervisors that she had to take her daughter to the doctor appointment and would not be able to work overtime. She was told not to worry about it and to care for her daughter.

However, the next day, when Plaintiff reported to work, she received a discipline note for leaving work without authorization. Plaintiff was upset that she received this note given that she was approved for intermittent FMLA leave and informed her supervisors of the exigent circumstances from the previous day. Plaintiff filed a complaint with the DOC EEO office. A meeting was scheduled for the next day, February 8, 2023, and Plaintiff also had to use her intermittent leave to take her daughter back to the neurosurgeon. Plaintiff informed her supervisors about the need for personal time to attend the EEO meeting and the intermittent leave related to her daughter.

Two days later, Defendant transferred Plaintiff out of the investigation unit and assigned her to a position as a traditional jail correction officer. Also, knowing that Plaintiff had to care for her daughter before school based on her disabilities, Defendant changed her shift from 8 a.m. to 4 p.m. (which allowed her to care for her daughter before work) to 6:00 a.m. to 2 p.m. (which did not allow Plaintiff to care for her daughter prior to work). Plaintiff fought to get back to the investigation unit and to change her shift to no avail—Defendant seemed to always have an excuse not to remedy the situation.

On February 10, 2025, Plaintiff, pro se, filed a complaint alleging claims for FMLA retaliation and FMLA interference. She alleged that Defendant disciplined her, transferred her out of the investigation unit and refused to remedy the shift situation because she exercised her rights under the FMLA and in retaliation for submitting a complaint to EEO about Defendant violating her rights.

Plaintiff later hired the undersigned to represent her. With this motion, Plaintiff seeks leave to amend the Complaint to fully describe the facts supporting the FMLA violations and to add two additional claims: violation of section 8-107 of the New York City Administrative Code for discrimination against a caregiver, and violation of section 296 of the New York Executive Law for discrimination based on familial status. The facts alleged in support of the interference and retaliation claims under the FMLA also support claims under the theories of caregiver and familial status discrimination, as Plaintiff alleges she was disciplined and transferred because she is a single mother who had to care for her daughter with a serious medical condition.

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court should freely give leave to amend the complaint when justice so requires. *See Adams v. 796-798 Ninth Successor LLC*, 2025 U.S. Dist. Lexis 149695 *1-2 (S.D.N.Y. Aug. 4, 2025). Leave to amend should be freely given absent undue delay, bad faith or dilatory motives by movant, or undue prejudice against the opposing party. *Id.*

Here, Plaintiff proceeded *pro se* when she initially commenced the action and should be able to make technical "fixes" and improve the pleading now that she has obtained counsel. Also, the new claims asserted by Plaintiff in the Proposed Amended Complaint are all based on the same core facts that were alleged in the original complaint, and assuming the Court grants the motion

deeming the Amended Complaint filed on February 6, 2026 *nunc pro tunc*, they would be timely. Further, the parties have not engaged in any formal discovery. Accordingly, there is no undue prejudice or surprise against the City by allowing Plaintiff leave to file the Proposed Amended Complaint, and Plaintiff has not engaged in undue delay or dilatory tactics. As such, Plaintiff respectfully requests that she be permitted to file the motion for leave to amend the complaint and that such motion should be granted. *See id.* at *2-3; *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo, LLC,* 797 F.3d 160, 190 (2d Cir. 2015).

The parties have been engaged in settlement discussions and have conducted settlement conferences before Magistrate Judge McCarthy over the last several months. These discussions and conferences are continuing, as there is another settlement conference scheduled on February 25, 2026. Plaintiff hoped to avoid making this application, but due to the date and statute of limitations issues related to the New York City Administrative Code and New York Executive Law claims, she had no choice but to make this application today.

Thank you for your consideration of this request.

Respectfully submitted,

David R. Ehrlich

DRE\sh
cc: Counsel of Record via ECF

# Exhibit "A"

David R. Ehrlich (de-9786)
Stagg Wabnik Law Group LLP
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4550
dehrlich@staggwabnik.com

*Attorneys for Plaintiff*
*Keaunga Glover*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
(White Plains Division)
-------------------------------------------------------------------X
KEAUNGA GLOVER,

Plaintiff,

-against-

THE CITY OF NEW YORK~~NEW YORK CITY DEPARTMENT OF CORRECTIONS~~,

Defendant.
-------------------------------------------------------------------X

**CASE NO. 7:25-CV-01174 (KMK)(JCM)**

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**COMPLAINT FOR VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT (FMLA) AND FOR VIOLATIONS OF THE NEW YORK CITY AND NEW YORK STATEMENT HUMAN RIGHTS LAWS**

**INTRODUCTION**

1. This is an action for violations of the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 et seq.), specifically for the retaliation under 29 U.S.C. § 2615(a)(2) and interference with FMLA rights under 29 U.S.C. § 2615(a)(1), and their commensurate regulations set forth in 29 C.F.R. § 825.220. This is also an action for violations of the New York City Administrative Code § 8-107 (discrimination based on Plaintiff's caregiver status) and the New York Executive Law § 296 (discrimination based on Plaintiff's familial status).

2. Plaintiff, Keaunga Glover, exercised hertheir rights under the FMLA to care for hertheir child, who has a documented serious health and medical condition, i.e., her minor child suffered from a brain tumor, the effects of the brain tumor, and the post-surgical effects and disabilities of having the brain tumor surgically removed. Plaintiff applied for and was granted intermittent FMLA leave to care for her child in relation to her child's brain tumor and post-surgical recuperation and associated disabilities. The intermittent leave was approved through February 24, 2023. However, In retaliation, Defendant City of New York interfered with and retaliated against Plaintiff for exercising her rights under the FMLA by, inter alia, issuing a disciplinary action, transferring her to a different position with lower status, intentionally transferring her to a different shift (starting at 6:00 a.m. instead of 8:00 a.m.) in which the City knew she could not fulfill based on her need to care for her child, and otherwise New York City Department of Corrections issued disciplinary action and subsequently transferred Plaintiff to a different position, negatively impacting hertheir career and working conditions. Defendant City of New York also retaliated against Plaintiff as described above because Plaintiff submitted a complaint to the Equal Employment Opportunity office of the Department of Correction when she was disciplined for exercising her rights.

2.3. The discriminatory and retaliatory actions by the City were similarly a result of Plaintiff maintaining the status of "caregiver" and because of her familial status of being a single mother who had to care for a child with a serious medical condition.

3.4. Plaintiff seeks all available legal and equitable relief, including reinstatement, back pay, front pay, liquidated damages, attorney's fees, and any other relief deemed appropriate by the Court.

---

**JURISDICTION AND VENUE**

~~4.~~5. This Court has jurisdiction under 28 U.S.C. § 1331, as this matter arises under the Family and Medical Leave Act (29 U.S.C. § 2601 et seq.).

~~5.~~6. Venue is proper in this judicial district under 28 U.S.C. § 1391, as the events giving rise to this action occurred within the Southern District of New York and Plaintiff was employed by New York City.

---

**PARTIES**

~~6.~~7. Plaintiff, Keaunga Glover, is an employee of the City of New York, through the New York City Department of Corrections and at all relevant times was eligible for FMLA leave.

~~7.~~8. Defendant, City of New York was and still is a municipal corporation and operates the New York City Department of Corrections.~~,~~ As such, the City of New York is an employer as defined under 29 U.S.C. § 2611(4)(A) and is subject to the requirements of the FMLA.

---

**FACTUAL ALLEGATIONS**

9. Plaintiff has been employed by Defendant since June 26, 2006, and worked in the capacity of Correction Officer Investigator.

~~8.~~10. At all relevant times, Plaintiff was a trained and certified investigator, including certifications in use of force investigations and sex crime investigations. Plaintiff completed specialized training qualifying her to conduct sensitive investigations involving allegations of sexual abuse, staff misconduct and use of force.

11. Plaintiff is the parent of a child with a serious documented medical condition, specifically a brain tumor and the post-surgical effects and disabilities associates with the brain tumor and extraction of the brain tumor.

12. In or about the middle of 2022, Plaintiff applied for intermittent FMLA to care for her child, which included taking her child to doctor appointments related to the brain tumor and post-surgical effects and disabilities, and to care for her flare-ups and complications associated with her child's brain tumor and post-surgical care.

13. Plaintiff was eligible to receive the benefits under the FMLA because she had worked more than 1,250 hours in the 12 months previous to her request.

~~9.~~14. In or about September 2, 2022, the Defendant City of New York approved Plaintiff's request for intermittent FMLA leave, specifically stating that she was entitled to exercise those rights from August 25, 2022 through February 24, 2023, ~~and was approved for intermittent FMLA leave~~ to provide the necessary care to her child with a serious medical condition.~~,~~

15. As a mother of a minor child who was inflicted with a brain tumor and who suffered from the post-surgical effects and disabilities associated with the brain tumor and removal of the brain tumor, Plaintiff was the person who provided direct and ongoing care for her minor child, and as such qualified as a caregiver under the New York City Administrative Code.

16. On or about February 6, 2023, Plaintiff used her intermittent FMLA leave to take her~~their~~ child to a medical appointment associated with the brain tumor care after the~~ir~~ pre-arranged transportation for the child unexpectedly fell through.

~~10.~~17. Plaintiff notified her superiors orally and in writing of her need to take the leave as soon as she found out that she had to take her child to the medical appointment. The situation

was an exigent circumstance and Plaintiff provided notice to her superiors about her need to use her intermittent FMLA as soon as possible.

18. Plaintiff returned to work the following day (February 7, 2023) after exercising her leave rights under the FMLA and was issued a write-up for "unauthorized leave" relating to her use of leave on February 6, 2023, despite being on approved intermittent FMLA leave and immediately informing her superiors of the need for the leave when the emergency presented itself.

19. On that day, February 7, 2023, Plaintiff filed a complaint with the DOC's EEO department complaining that she should not have been disciplined or received a warning for using her intermittent FMLA leave on February 6, 2023.

20. During a February 7, 2023 meeting with her supervisors, Plaintiff was assured that she would not be transferred out of the investigation unit, as they knew of her caregiving responsibilities and her child's medical condition.

21. The EEO Department scheduled a meeting to discuss the matter in the morning of February 8, 2023. Upon information and belief, the EEO Department advised Plaintiff's supervisors of the meeting. When Plaintiff received notice of the February 8, 2023 meeting, she informed her superiors of her need to attend the meeting.

22. Plaintiff had also informed her supervisors on February 7, 2023 that she had to use intermittent FMLA leave in the afternoon of February 8, 2023 for another doctor appointment for her child—there was a flareup.

~~11.~~23. Plaintiff also submitted a letter from her child's neurosurgeon requesting that Defendant stop interfering with Plaintiff's approved leave and the her child's medical care.

24. Less than one week after Plaintiff exercised her rights under the FMLA and complained to the EEO Department about being disciplined for using her approved FMLA leave,

PlaintiffShortly after Plaintiff reported this retaliation to internal EEO authorities, they wasere abruptly transferred from hertheir investigative role to a standard correction officer position on or about February 13, 2023. Defendant transferred Plaintiff out of the investigation unit even though her supervisors assured her that she would not be transferred, and did so only days after she made an EEO Complaint and submitted the note from her child's doctor about Defendant's interference.

25. With that transfer, Plaintiff's shift was changed from 8:00 a.m. to 4 p.m. to 6:00 a.m. to 2:00 p.m.

26. Defendant knew that Plaintiff had to care for her child in the early mornings and that she would not be able to make the start of the shift at 6:00 a.m.

27. The transfer of Plaintiff from the investigation role to a standard correction officer position, along with the change of shift, was done to punish Plaintiff for exercising her FMLA rights and for complaining about the discipline she received for exercising her FMLA rights by filing an EEO complaint.

12.28. The interference of Plaintiff's FMLA rights, and the retaliation against Plaintiff for exercising her FMLA and filing a complaint about the same was deliberate, intentional and willful.

29. Defendant falsely claimed that Plaintiff's transfer was due to a failure to provide timely notice of an EEO meeting. However, the required notice had been given, and personnel management had been informed in accordance with policy.

30. The discipline issued to Plaintiff for exercising her FMLA rights on February 6, 2023 was explicit, i.e., the City disciplined Plaintiff for an unauthorized leave even though she had the rights under the FMLA to leave to care for her child and notified multiple supervisors as soon as able.

~~13.~~31. The temporal proximity between Plaintiff's exercise of her rights under the FMLA and her complaint to the EEO Department, on the one hand, and the transfer out of the investigation division and the placement into a shift Defendant knew she could not fulfill clearly demonstrates that the adverse action was retaliatory for the exercise of her FMLA rights and her filing of the EEO complaint.

~~14.~~32. Plaintiff filed a grievance with the Investigation Division head, which was denied on September 1, 2023, with no legitimate, non-retaliatory reason given for the transfer.

~~15.~~33. Plaintiff escalated the issue to the Commissioner of Labor Relations, but the appeal has been delayed indefinitely, with Defendant citing a backlog without providing supporting documentation.

~~16.~~34. Defendant's actions have caused loss of career advancement opportunities, financial harm, emotional distress, and reputational damage to Plaintiff.

---

**CLAIMS FOR RELIEF**

**COUNT I – RETALIATION UNDER THE FMLA (29 U.S.C. § 2615 (a)(2) and 29 C.F.R. § 825.220(b) & (c))**

~~17.~~35. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

36. Under 29 U.S.C. § 2615(a)(2), it is unlawful for an employer to retaliate against an employer for exercising FMLA rights.

37. Plaintiff was eligible for and had approved intermittent FMLA rights to care for her child with a serious medical condition from August 24, 2022 to February 24, 2023.

38. Plaintiff exercised her rights to intermittent FMLA to care for her child with a serious health condition on February 6, 2023 and February 8, 2023.

39. Plaintiff notified her supervisors of the need to exercise those rights as soon as practicable.

40. After Defendant issued a disciplinary notice to Plaintiff on February 7, 2023 for exercising her FMLA rights, Plaintiff submitted a complaint to EEO on February 7, 2023 about the violation of her rights.

~~18.~~41. The complaint made to EEO was protected activity.

~~19.~~42. Defendant retaliated against Plaintiff for exercising her FMLA rights and for engaging in protected activity by making the complaint to EEO by:

- Issuing disciplinary action for using FMLA leave
- Transferring Plaintiff to a less favorable position and to a shift Defendant knew Plaintiff could not comply with shortly after reporting FMLA retaliation and exercising her FMLA rights.
- Providing pretextual reasons for Plaintiff's transfer and delaying their appeal process.

~~20.~~43. As a result of Defendant's retaliation, Plaintiff suffered economic and professional harm, including lost opportunities for career advancement and financial losses, and emotional distress.

~~21.~~44. Defendant's actions were willful, entitling Plaintiff to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

---

**COUNT II – INTERFERENCE WITH FMLA RIGHTS (29 U.S.C. § 2615 (a)(1) and 29 C.F.R. § 825.220(b) & (c))**

~~22.~~45. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

~~23.~~46. Under 29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220(b), an employer may not interfere with, restrain, or deny an employee's FMLA rights.

47. Under those laws and regulations~~29 C.F.R. § 825.220(c)~~, an employer is prohibited from using FMLA leave as a negative factor in employment decisions, such as disciplinary actions, transfers, or promotions.

48. Plaintiff was eligible for and had approved intermittent FMLA rights to care for her child with a serious medical condition from August 24, 2022 to February 24, 2023.

Formatted: Indent: Left: 0", First line: 0.5"

49. Plaintiff exercised her rights to intermittent FMLA to care for her child with a serious health condition on February 6, 2023 and February 8, 2023.

50. Plaintiff notified her supervisors of the need to exercise those rights as soon as practicable.

51. After Defendant issued a disciplinary notice to Plaintiff on February 7, 2023 for exercising her FMLA rights, Plaintiff submitted a complaint to EEO on February 7, 2023 about the violation of her rights.

~~24.~~52. The complaint made to EEO was protected activity.

~~25.~~53. Defendant interfered with Plaintiff's FMLA rights by:

- Penalizing Plaintiff for using approved FMLA leave.
- Discouraging Plaintiff from taking FMLA leave through retaliatory disciplinary action.
- Transferring Plaintiff in retaliation for using FMLA leave and reporting retaliation.

54. As a direct and proximate result of Defendant's interference, Plaintiff has suffered lost wages, professional setbacks, and emotional distress.

**COUNT III – VIOLATION OF NYC ADMINISTRATIVE CODE § 8-107**

Formatted: Font: Bold

55. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

56. In the relevant period set forth herein, Plaintiff maintained caregiver status under the New York Administrative Code § 8-107 because she provided direct and ongoing care for her minor child.

57. Plaintiff sought and obtained leave rights to allow her to fulfill her caregiver duties, and obtained such leave rights in the period of August 24, 2022 to February 24, 2023.

58. As her minor child's caregiver, Plaintiff had to leave at the end of her shift on February 6, 2023 (and could not work overtime) to provide care to her child, i.e., take her child to a doctor appointment, and had to do the same in the afternoon of February 8, 2023.

59. Because Plaintiff was a caregiver, and had obligations to care for her minor child with a serious medical condition and related disabilities, Defendant discriminated against her by issuing discipline and transferring her from her investigative role to an ordinary correction officer role.

60. Defendant explicitly issued discipline to Plaintiff on February 7, 2023 because she had obligations as a caregiver to her child.

61. Defendant transferred Plaintiff out of her investigative role because Plaintiff complained about the discipline she received for being a caregiver and because she had caregiver obligations, including specific obligations on February 6, 2023 and February 8, 2023.

62. Defendant, knowing that Plaintiff had caregiving obligations, including having to escort her child with a serious health condition and disabilities on the school bus everyday early in the morning, deliberately changed her shift from 8 a.m. to 4 p.m. to 6 a.m. to 2 p.m. This was done maliciously to Plaintiff because she had caregiver obligations and complained to EEO about Defendant's discrimination of her as a caregiver.

63. The temporal proximity between Plaintiff engaging in her caregiving obligations, for which she had approved leave, and the adverse actions against Plaintiff show that Defendant sought to punish Plaintiff for being a caregiver and having caregiving responsibilities.

64. Defendant's actions designed to punish Plaintiff for being a caregiver and having caregiving obligations and rights based on being a caregiver, e.g., disciplining Plaintiff and transferring her out of her investigative role, violate section 8-107 of the New York City Administrative Code.

65. As a result of Defendant's discrimination and violation of 8-107 of the New York City Administrative Code, Plaintiff suffered monetary losses, lost compensation, lost promotional opportunities, and severe emotional distress.

66. As a result of Defendant's discrimination and violation of 8-107 of the New York City Administrative Code, Plaintiff is entitled to monetary relief, compensatory damages, and attorney's fees.

---

**COUNT IV –VIOLATION OF NY EXECUTIVE LAW § 296 FAMILIAL STATUS**

Formatted: Font: Bold

67. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

68. Plaintiff is a single mother taking care of a minor child who suffered from a brain tumor and the post-surgical effects and disabilities associated with having the brain tumor and the tumor being surgically removed.

69. As a single mother taking care of a child with a serious health issue, she falls within the protected status within New York Executive Law § 296 of familial status, i.e., an employer cannot discriminate against Plaintiff on the basis that she is a single mother caring for a minor child with a serious health condition.

70. Plaintiff sought and obtained leave rights to allow her to fulfill her duties as a single mother caring for a child with a serious health condition, and obtained such leave rights in the period of August 24, 2022 to February 24, 2023.

Formatted: Indent: Left: 0", First line: 0.5"

71. As a single mother caring for her minor child with a serious health condition, Plaintiff had to leave at the end of her shift on February 6, 2023 (and could not work overtime) to provide care to her child, i.e., take her child to a doctor appointment, and had to do the same in the afternoon of February 8, 2023.

72. Because Plaintiff was a single mother caring for a minor child with a serious health condition, and had familial obligations, Defendant discriminated against her by issuing discipline and transferring her from her investigative role to an ordinary correction officer role.

73. Defendant explicitly issued discipline to Plaintiff on February 7, 2023 because she had familial obligations for which she had approved rights.

74. Defendant transferred Plaintiff out of her investigative role because Plaintiff complained about the discipline she received for being a single mother who had familial obligations (and approved rights to take care of those obligations), including specific obligations on February 6, 2023 and February 8, 2023.

75. Defendant, knowing that Plaintiff was a single mother with special familial obligations, including having to escort her child with a serious health condition and disabilities on the school bus everyday early in the morning, deliberately changed her shift from 8 a.m. to 4 p.m. to 6 a.m. to 2 p.m. This was done maliciously to Plaintiff because she was a single mother with special familial obligations and complained to EEO about Defendant's discrimination of her as a single mother who had approved and protected rights to take care of her minor child.

76. The temporal proximity between Plaintiff engaging in her familial obligations, for which she had approved leave, and the adverse actions against Plaintiff show that Defendant sought to punish Plaintiff for being a single mother with caregiving responsibilities.

77. Defendant's actions, designed to punish Plaintiff for being a single mother with familial and caregiving obligations, e.g., disciplining Plaintiff and transferring her out of her investigative role, violate section 296 of the New York Executive Law § 296..

78. As a result of Defendant's discrimination and violation of section 296 of the New York Executive Law, Plaintiff suffered monetary losses, lost compensation, lost promotional opportunities, and severe emotional distress.

79. As a result of Defendant's discrimination and violation of section 296 of the New York Executive Law, Plaintiff is entitled to monetary relief, compensatory damages, and attorney's fees

~~26.~~

Formatted: Indent: Left: 0.5", No bullets or numbering

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Court grant the following relief:

A. Reinstatement to Plaintiff's original position or a comparable role.

B. Back pay and front pay for lost wages and benefits.

~~B.~~C. All lost compensation as a result of the illegal, discriminatory and/or retaliatory acts, including, but not limited to, lost wages, lost benefits, losses related to Plaintiff's pension benefits, and all monetary losses resulting from Defendant's illegal conduct.

~~C.~~D. Liquidated damages for willful violations of the FMLA.

~~D.~~E. Compensatory damages for emotional distress.

F. Attorneys' fees and costs under 29 U.S.C. § 2617(a)(3)

~~E.~~G. All other monetary, compensatory, or equitable that this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: Garden City, New York
February 6, 2026

Stagg Wabnik Law Group LLP

By: ______________________
David Ehrlich
*Attorneys for Plaintiff*
*Keaunga Glover*
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4518
*dehrlich@staggwabnik.com*